# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 8, 2009

## STATE OF TENNESSEE v. ANTHONY DOUGLAS DANSBY

**Direct Appeal from the Criminal Court for Sumner County**
**No. CR482-2008    Dee David Gay, Judge**

---

**No. M2009-00946-CCA-R3-CD - Filed April 23, 2010**

---

The Defendant, Anthony Douglas Dansby, pled guilty to driving under the influence ("DUI"), violation of the implied consent law, violation of the seatbelt law, violation of the open container law, and possession of a Schedule VI controlled substance. In accordance with Tennessee Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the stop of his vehicle, which led to his indictment and guilty plea, was constitutional. After a thorough review of the record and applicable authorities, we conclude that the stop of the Defendant's vehicle was constitutional; therefore, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the**
**Criminal Court are Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Lawren B. Lassiter, Gallatin, Tennessee, for the Appellant, Anthony Douglas Dansby.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Deshea Dulany Faughn, Assistant Attorney General; L. Ray Whitley, District Attorney General; William Lamberth, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the stop of the Defendant's vehicle in Sumner County, which led to the Defendant being charged with DUI, possession of a Schedule VI controlled

substance (marijuana), violation of the implied consent law, violation of the open container law, and violation of the seatbelt law. Though he ultimately pled guilty, the Defendant initially filed a motion to suppress the evidence seized during the stop of his vehicle, and the trial court held a hearing to dispose of this motion. At this hearing, Kevin Jackson, the Gallatin Police Department officer who stopped the Defendant's vehicle, recalled what he observed that led him to stop the Defendant.

Officer Jackson testified that, on November 1, 2007, he was assisting a fellow officer, Jamie Helson, in a traffic stop, when the Defendant drove past the two officers' squad cars. As the Defendant passed, Officer Helson remarked to Officer Jackson through his radio that the driver of the passing car was not wearing a seatbelt. Officer Jackson then followed the Defendant in his squad car. From behind the Defendant's vehicle, Officer Jackson observed that a seatbelt hung by the driver's seat but that its strap was not pulled across the Defendant's body. Also, the officer noticed that the Defendant's front windshield was cracked. Officer Jackson stopped the Defendant's vehicle and, upon walking to the Defendant's window, observed that the Defendant still was not wearing a seatbelt. The officer conceded that he did not recall whether he saw a shoulder strap in the Defendant's vehicle when he was standing at the driver's window speaking with the Defendant. Officer Jackson testified that he had stopped vehicles similar to the 1977 Chevrolet Caprice convertible driven by the Defendant and that such cars commonly have shoulder straps. While Officer Jackson conducted his stop of the Defendant's vehicle, he obtained evidence that the Defendant was driving while under the influence.

Upon examination by the trial court, Officer Jackson testified it was approximately 6:52 p.m. when he stopped the Defendant, but he could not recall whether it was dark outside. He estimated he followed the Defendant for one hundred yards, "just long enough to not observe the seat belt," before stopping him. Officer Jackson testified that the Defendant was not wearing any kind of belt, either a lap belt or a shoulder strap, when he spoke with the Defendant at his window.

On cross-examination, Officer Jackson said he was only briefly stopped behind Officer Helson's car before Officer Helson alerted him to the Defendant's vehicle. He immediately pulled his squad car onto the road and began pursuing the Defendant. Soon, he was directly behind the Defendant's vehicle, where he saw that the Defendant's shoulder strap was not pulled across his body. Having observed this, Officer Jackson turned on his blue lights and stopped the Defendant's vehicle. He testified that he only noticed the Defendant's cracked windshield as he walked up to speak with the Defendant.

The officer acknowledged that he noted in his official report of the stop that he stopped the Defendant's vehicle not only because the Defendant was not wearing a seatbelt

2

but also because the vehicle's windshield was cracked. He testified, however, that he wrote this only to be thorough and that he actually only stopped the Defendant's vehicle because the Defendant was not wearing a seatbelt. The officer acknowledged that some older vehicles do not have shoulder straps. He also acknowledged that, as he followed the Defendant's vehicle, he had no way of knowing whether the Defendant was wearing a lap belt. The officer testified he understood that wearing only a lap belt was not a violation of the law.

On re-direct examination, Officer Jackson said he was trained to get behind a car and look between its door and its seat for a hanging belt in order to determine whether the driver was wearing a seatbelt. He testified that, in his experience, most cars from the '70s, '80s, and '90s have shoulder straps and that he has pulled over convertibles that have shoulder straps. According to the officer, when he has stopped vehicles that have only lap belts, such as antique cars, the drivers typically have paperwork verifying that the vehicle originally only had a lap belt. He agreed that the Defendant's car was not a particularly old car, and he did not expect that it only had a lap belt.

At the close of the suppression hearing, the trial court found that Officer Jackson's observation that the Defendant's shoulder strap was not attached was a specific and articulable fact that led to the reasonable suspicion that the Defendant was not wearing a seatbelt. As such, it held that Officer Jackson properly stopped the Defendant's vehicle and that suppression of the evidence that the Defendant was driving under the influence was not warranted.

## II. Analysis

The Defendant contends Officer Jackson lacked reasonable suspicion to stop his vehicle, rendering the evidence gathered after the stop inadmissible. The State responds that the trial court properly admitted the evidence because the officer had reasonable suspicion to believe the Defendant was not wearing a seatbelt in violation of Tennessee law.

### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. An appeal lies from any judgment of conviction upon a plea of guilty if the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved with the consent of the State and the court the right to appeal a certified question of law that is dispositive of the case. Tenn. R. Crim. Proc. 37(b)(2); *see State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). Further, the following are prerequisites for an

appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;
>
> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

The record shows that these requirements have been met. The judgment of conviction contains a statement of the certified question of law with the judge's signature below:

> Sentence held in abeyance while certified question pending on appeal. "Whether or not the officer's stop and/or seizure of the [D]efendant was based on reasonable suspicion supported by specified and articulable facts." Both parties agree this question is dispositive to the case.

The statement clearly identifies the certified question in both scope and legal limits, and it verifies that the trial court and the State both expressly consented to the reservation of the certified question. Also, the statement indicates that the trial court, the State, and the Defendant were of the opinion that the certified question was dispositive in the Defendant's case, and we agree. In this case, if Officer Jackson did not have reasonable suspicion to stop the Defendant's vehicle, then all evidence seized after the stop of his vehicle would be excluded. *State v. Troxell*, 78 S.W.3d 866, 870-71 (Tenn. 2002). As such, this issue is dispositive on appeal, and we will address it.

### B. Motion to Suppress

The Defendant argues that Officer Jackson's observation that he was not wearing a shoulder strap does not amount to a specific and articulable fact giving rise to a reasonable

4

suspicion that the Defendant was violating the seatbelt law. The Defendant notes first that wearing a lap belt alone satisfies the seatbelt law, and he states that his vehicle was equipped only with a lap belt. He contends that Officer Jackson could not have detected whether he was complying with the seatbelt law from where the officer followed in his squad car. Likening this case to *U.S. v. Twilley*, the Defendant argues that Officer Jackson's belief that the Defendant was not in compliance with the seatbelt law because he was not wearing a seatbelt amounts to a "mistake of law," which is an unlawful basis for a vehicle stop. 222 F.3d 1092 (9th Cir. 2000) (holding that a stop based upon an officer's "good faith" misunderstanding of the law is nonetheless an unlawful stop).

The State responds that, given Officer Jackson's training and experience, his observation that the Defendant was not wearing a shoulder strap constituted a specific and articulable fact giving rise to the reasonable suspicion that the Defendant was not wearing a seatbelt. As such, the State contends, the stop of the Defendant's vehicle was lawful and evidence seized therefrom need not be suppressed.

The standard of review for a trial court's suppression hearing mandates that its findings of fact "will be upheld unless the evidence preponderates otherwise." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *accord State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution and conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id*. However, this court reviews a trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 22-23; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the United States and Tennessee Constitution protect against unreasonable searches and seizures. The Fourth Amendment of the U.S. Constitution proclaims that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Article 1, Section 7 of the Tennessee Constitution provides "people shall be secure in their persons, houses, and papers and possessions, from unreasonable searches and seizures." Tenn. Const. art. I, § 7. Generally, to search a person's property, a warrant is needed. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). Evidence seized as a result of a warrantless search of a person's property, therefore, "is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant

5

requirement." *Id*. A trial court accordingly presumes that a warrantless search or seizure is unreasonable unless the State demonstrates that one of the exceptions to the warrant requirement applies to the search. *Id*.

One exception to the warrant requirement is when an officer has reasonable suspicion to believe some criminal action involving a vehicle has occurred. *Terry v. Ohio*, 392 U.S. 1 (1968). An officer may make a brief investigatory stop if the officer has a reasonable suspicion based upon specific and articulable facts that a criminal offense has been, is being, or is about to be committed. *Id*. Whether reasonable suspicion exists is determined subjectively, by examining the totality of the circumstances surrounding the stop. *State v. Smith*, 21 S.W.3d 251, 256 (Tenn. Crim. App. 1999). An officer may base his stop on personal observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *See State v. Lawson*, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996). The rational inferences that a seasoned officer draws from facts and circumstances may also support his reasonable belief. *Smith*, 21 S.W.3d at 256.

At the conclusion of the suppression hearing, the trial court first found that Officer Jackson pursued the Defendant because Officer Helson informed him that the Defendant was not wearing a seatbelt:

> I give much credit to the officer's testimony and his ability to see what he testified to. And the record reflects that the officer was assisting Officer Helson on West Eastland. Officer Helson saw the [D]efendant drive by not wearing a seat belt and this was communicated to Officer Jackson, so Officer Jackson falls in behind the [D]efendant's vehicle.

The trial court then found that, as he followed the Defendant's car, Officer Jackson saw no shoulder harness stretched across the driver's seat of the Defendant's car. Satisfied that the Defendant indeed was not wearing a seatbelt, he stopped the Defendant's vehicle based upon the Defendant's failure to wear a seatbelt:

> So [Officer Jackson] was focused on [the one issue of the Defendant not wearing a seatbelt.] The officer testified that it was getting dark, he could still see, that the area was well lit. The officer testified he followed the [D]efendant approximately 100 yards. There was nothing obstructing his view and he was looking for a seat belt violation. He clearly saw that there was no shoulder harness from the A frame to the seat or the seat of the vehicle because he clearly saw–and I find that that is very clear that he clearly saw that there was no shoulder harness. He stopped this vehicle for a violation of the seat

6

belt law.

The court then concluded that Officer Jackson's observation that the Defendant was not wearing a shoulder harness was a "specific and articulable fact that leads to a reasonable suspicion that the [D]efendant was not restrained," in violation of the safety belt law. As such, the trial court found that the stop was constitutional, and it denied the Defendant's motion to suppress.

First, we note that the record does not preponderate against the trial court's findings of fact. Officer Jackson testified that Officer Helson told him he had not seen a seatbelt on the Defendant as the Defendant drove past his vehicle. Also, Officer Jackson testified that, after he was informed that the Defendant was not wearing a seatbelt, he followed the Defendant closely and pulled the Defendant over after he saw that the Defendant was not wearing a shoulder strap. Thus, the record does not preponderate against the trial court's finding that Officer Jackson stopped the Defendant, in part, because he believed the Defendant was not wearing seatbelt based upon information he received from Officer Helson. *See Odom*, 928 S.W.2d at 23. Also, the record does not preponderate against the trial court's finding that Officer Jackson did not see the outline of a seatbelt stretched across the Defendant's body, inferred that the Defendant was not wearing a seatbelt, and, based on this, pulled the Defendant over. *See id*.

As to whether Officer Jackson's observations constituted "specific and articulable fact" leading to the reasonable suspicion that the Defendant was not wearing a seatbelt, we find guidance in *State v. Harris*, 280 S.W.3d 832, 839-40 (Tenn. Crim. App. 2008). In that case, this Court concluded that an officer's observation that a defendant-driver's seatbelt was dangling, unfastened, from the door post constituted reasonable suspicion that the defendant was in violation of Tennessee Code Annotated section 55-9-603(a)(1) (2006), which requires any occupant of a passenger motor vehicle to wear a seatbelt when the vehicle is in forward motion. *Id*.

In this case, not only did Officer Jackson observe that no seatbelt was stretched across the Defendant's body, but also Officer Helson told Officer Jackson that he had not seen a seatbelt on the Defendant when the Defendant drove past Officer Helson's vehicle. Thus, both the arresting officer's own observations and the observations of his fellow officer, Officer Helson, support the stop of the Defendant's vehicle. *See Harris*, 280 S.W.3d at 839-40; *see also Lawson*, 929 S.W.2d at 408 ("An officer may base his stop on personal observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants."). The Defendant's insistence that his vehicle was not equipped with a shoulder strap is unavailing for three reasons: First, Officer Jackson's observation that no shoulder strap was attached need only lead to a "reasonable

7

suspicion" not the *absolutely necessary conclusion* that the Defendant was not wearing a seatbelt. Because most vehicles have shoulder straps and because Officer Jackson believed a car like the Defendant's would have a shoulder strap, his suspicion that the Defendant was not wearing a seatbelt was reasonable. Second, the Defendant introduced no evidence at the suppression hearing that his vehicle, in fact, did not have a shoulder strap. Finally, Officer Jackson testified that the Defendant was not wearing even a lapbelt when he spoke with the Defendant at his window after stopping him. We conclude that Officer Jackson had reasonable suspicion to stop the Defendant's vehicle. Thus, his stop of the Defendant's vehicle was constitutional, and suppression of the evidence seized during this stop is not necessary. The trial court properly denied the Defendant's motion to suppress. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the evidence and relevant authorities, we conclude that the stop of the Defendant's vehicle was constitutional. Accordingly, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE