# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 9, 2010 Session

## STATE OF TENNESSEE v. JEFFERY D. LEMAY

**Appeal from the Circuit Court for Marshall County**
**No. 17698    Robert Crigler, Judge**

**No. M2010-00175-CCA-R3-CD - Filed January 11, 2011**

The defendant, Jeffery D. Lemay, pleaded guilty to one count of rape of a child, a Class A felony, and reserved a certified question of law challenging the trial court's order finding him competent to stand trial. *See* Tenn. R. Crim. P. 37(b)(2)(a). Following our review, we conclude that the defendant failed to properly certify a question of law that is dispositive of the case. Accordingly, we dismiss the appeal.

**Tenn. R. App. P. 3; Appeal Dismissed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Melissa L. Thomas, Fayetteville, Tennessee, for the appellant, Jeffery D. Lemay.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempl, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Marshall County grand jury charged the defendant in a 20-count indictment with two counts of rape of a child, two counts of aggravated sexual battery, eight counts of rape, four counts of sexual battery, and four counts of statutory rape by an authority figure for acts alleged to have been committed by the defendant against his stepdaughter on six specific dates spanning a time frame of over two years. Defense counsel petitioned the court for a mental evaluation to determine the defendant's competency to stand trial pursuant to Tennessee Code Annotated section 33-7-310(a). The trial court initially denied the petition based upon the defendant's non-indigent status. The trial court, however, eventually ordered a competency evaluation. Following the completion of the evaluation and a full

evidentiary hearing, the trial court found the defendant competent to stand trial. This court denied the defendant's appeals pursuant to Rules 9 and 10 of the Tennessee Rules of Appellate Procedure on two separate occasions. On February 11, 2010, the defendant entered into a plea agreement whereby he agreed to enter a best interest plea of guilty to one count of rape of a child, the State agreed to enter judgments of nolle prosequi on the remaining 19 counts of the indictment, and the defendant sought to reserve a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A) concerning the propriety of the trial court's finding him competent to stand trial.

At the March 6, 2009 competency hearing, Doctor Donna Moore testified that she had reviewed the defendant's academic records as part of her evaluation of the defendant's competency to stand trial. Doctor Moore said that an evaluation by school agents when the defendant was nine years old revealed that the defendant had an intelligence quotient (IQ) of 59, which was in the mild mental retardation range. Further school evaluations when the defendant was 16 years old revealed that the defendant had difficulty processing verbal information, although his ability to perform manual tasks was not as impaired. Doctor Moore said that the defendant received a special education diploma upon graduating high school. Based upon this information, Doctor Moore determined that the defendant was mentally retarded. Likewise, she determined that the defendant's difficulties in processing verbal information hindered his ability to understand the judicial process and to assist his attorney in the preparation of his defense, so she recommended that the defendant undergo competency training in hopes of improving his understanding of the judicial system and his ability to assist counsel. After completing seven one-hour competency sessions, Doctor Moore determined that the defendant could not learn because he was unable to retain the verbal information requisite to a competency finding. She stated that the defendant did not have a "complete factual or rational understanding" of the proceedings in which he was involved. She also determined that additional training would be futile.

On cross-examination, Doctor Moore admitted that she was familiar with some mentally retarded patients facing trial who had been housed in a mental health facility and who had undergone competency training "for years." She stressed, however, that no amount of competency training would help the defendant. When confronted with the defendant's specific answers to competency questions, Doctor Moore denied that the defendant evinced any understanding of the adversarial process. She also denied that the testing revealed any evidence of malingering by the defendant. Doctor Moore admitted that she could have benefitted from more time to gather information concerning the defendant's mental status and that the reliability of her diagnosis was tied to the reliability of the school records she had utilized in formulating her opinion. When asked about the defendant's IQ score of 80 at the age of 16, Doctor Moore opined that the testing method employed for that score was not as

reliable as the one utilized when the defendant was 9 years old that had indicated an IQ of 59.

The defendant's ex-wife, Heather Lemay, testified that she had known the defendant for approximately nine years. She said that she never had any idea that the defendant had a special education diploma or that he was mentally impaired in any way until he attempted to qualify for social security disability in 2004. She said that the defendant had always worked during their marriage and that he had been employed by the same factory for 20 years until its closing. She recalled that she and the defendant split household expenses while married and that the defendant wrote checks, balanced the checkbook, and always paid their bills in a timely manner. In fact, she said that the defendant "was very good about paying things early." After a factory where he had worked for many years closed, the defendant worked as a maintenance supervisor in a mobile home community where the couple lived. As part of his duties, the defendant read water meters, computed water bills for each tenant, collected rent, and wrote receipts. Ms. Lemay said that no psychologists ever contacted her regarding the defendant's competency evaluation.

The defendant's school records, 2004 disability application report, and several psychological reports were made exhibits at the competency hearing. The trial court found significant the defendant's malingering evidenced at the 2004 disability evaluation and in an earlier competency evaluation.

In an initial forensic evaluation performed in January 2008, psychologist Doctor Kimberly Brown reported that the defendant understood the purpose of the competency evaluation and that he agreed to participate in the evaluation. Doctor Brown's report also stated that the defendant presented appropriate affect and demeanor during the interviews. Her report further noted that, although the defendant's "adaptive functioning was not formally assessed during his school years," his school records noted that he evinced a level of emotional immaturity. The defendant self-reported that he relied upon others to assist him in his daily activities. His sister also reported that he "has difficulty understanding what happens in court and what is said in meetings with his attorney." Significantly, Doctor Brown reported that the defendant "was minimizing what he really knew" during the competency evaluation. Doctor Brown concluded that the defendant suffered from "mild mental retardation" affecting his competency, but she also noted that her findings were "complicate[d]" by "some malingering and poor effort" on the defendant's part.

A competency assessment instrument administered by Doctor Moore indicated that the defendant had a general understanding of courtroom proceedings and the adversarial process with some confusion about legal terminology. Significantly, the assessment also showed that the defendant possessed an accurate historical understanding of the charges

against him and of the factual basis of the charges.

On July 2, 2009, the trial court entered an order with written findings concerning the defendant's competency. In its findings, the trial court noted that the defendant was "gainfully employed full-time for approximately twenty (20) years by the same employer" until the factory closed and that the defendant successfully pursued a worker's compensation claim and had held a job requiring some "bookkeeping ability" subsequent to the factory's closure. Based upon Doctor Moore's testimony, the trial court noted that a mental retardation diagnosis required an IQ test score below 70 and deficits in adaptive behavior, both of which should be manifest before the age of 18. Additionally, the trial court noted Doctor Moore's testimony that someone who is in special education classes is not necessarily mentally retarded and that people who fall into the mild mental retardation range, like the defendant, "tend to be competent."

In ruling that the defendant failed to establish by a preponderance of the evidence his incompetency, the trial court found specifically that Doctor Moore's diagnosis of mental retardation was not supported by the proof in the school records because the school records were "insufficient to establish deficits in adaptive behavior." The trial court also found that Doctor Moore's interpretation of previous evaluations was "not accurate." The trial court found that Doctor Moore "did not give appropriate consideration to the defendant's work history, evidence of the defendant's malingering and the . . . adaptive functioning measure completed by the defendant's sister." Because the trial court ruled that the defendant was competent, the trial court made no findings related to Doctor Moore's conclusions regarding the defendant's ability to be competency trained.

The defendant sought an interlocutory appeal of the trial court's July 2, 2009 order pursuant to Tennessee Rule of Appellate Procedure 9. This court denied permission to appeal on August 7, 2009. *See State v. Jeffrey Lemay*, No. M2009-01455-CCA-R9-CD (Tenn. Crim. App., Nashville, Aug. 7, 2009) (Order).[1] On December 15, 2009, the trial court denied a motion to reconsider the competency issue. The defendant then sought an extraordinary appeal of the December 15, 2009 order pursuant to Tennessee Rule of Appellate Procedure 10. This court denied permission to appeal on February 9, 2010. *See State v. Jeffrey Lemay*, No. M2010-00175-CCA-R10-CD (Tenn. Crim. App., Nashville, Feb. 9, 2010) (Order).

---

[1] In previous orders, this court did not have a full record available for review and relied upon the spelling of the defendant's name as provided by the parties in their pleadings. The custom of this court is to spell a defendant's name as it appears in the charging instrument. Accordingly, we will utilize the name appearing in the indictment unless referring to a previous order of this court.

On February 11, 2010, the defendant entered into a plea agreement whereby the State entered orders of nolle prosequi on counts two through 20 of the indictment in exchange for the defendant's best interest guilty plea to count one of the indictment charging rape of a child. Per the agreement, the defendant received a sentence of 15 years' incarceration to be served at 100 percent. The guilty plea petition also provided that the defendant reserved a certified question of law for appeal as indicated by the parties' agreement that "all issues regarding competency are dispositive of the case." *See* Tenn. R. Crim. P. 37(b)(2)(A). On the same date, the trial court entered judgments consistent with the plea agreement. The judgment for count one, rape of a child, indicated that "[t]he Court, State and Defense agree that all issues concerning the defendant's competency to stand trial are dispositive of the case and are reserved for review by the appellate court." The defendant filed a notice of appeal on February 17, 2010. On March 3, 2010, the trial court entered an order in an attempt to more specifically outline the certified question presented for appeal by tying the competency issue to the defendant's mental retardation.

On appeal, the defendant argues that the trial court erred by ruling that he failed to prove by a preponderance of the evidence that he was incompetent to stand trial. He asserts that each expert opined that the defendant was incompetent and that the State presented no countervailing evidence. Therefore, he claims that he established incompetency by a preponderance of the evidence. The State, as an initial matter, contends that the appealed issue was not properly reserved because it is nonspecific. The State also contends that, even assuming the issue was properly reserved, the issue is not dispositive of the case. Therefore, the State urges this court to dismiss the appeal.

Initially, we note, contrary to the defendant's argument, that the State did indeed present countervailing evidence, including lay testimony and documents, which the trial court accredited in its findings.

We also agree with the State that the certified question presented is very general. Tennessee Rule of Criminal Procedure 37(b)(2)(A)(ii) provides, as a prerequisite to this court's review, that "the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved." Rule 37(b)(2)(A)(i) also requires that "the judgment or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review." The procedural requirements of Rule 37 must be strictly met in order to afford appellate review. *State v. Preston*, 759 S.W.2d 647 (Tenn. 1988).

It appears that the trial court attempted to specifically identify the certified question by entry of the March 3, 2009 order. This order, however, was ineffectual because

it was filed subsequently to the defendant's filing of the notice of appeal. The trial court lost jurisdiction to amend its judgment or incorporate by reference any other order once the notice of appeal was filed. *State v. Pendergrass*, 937 S.W.2d 834, 837-38 (Tenn. 1996); *State v. Irwin*, 962 S.W.2d 477 (Tenn. 1998).[2] Accordingly, we conclude that the defendant failed to meet the requirements of properly certifying the question for this court's review. *See State v. Harris*, 280 S.W.3d 832, 837 (Tenn. Crim. App. 2008).

That said, even if we assumed the defendant had complied with the Rule 37 requirements, we would decline to review this issue because the question raised is not dispositive of the case. This court has previously declined to review the propriety of a trial court's ruling concerning competency via Rule 37(b) because "a resolution [of the issue] favorable to the defendant would not result in dismissal" and was, therefore, not dispositive. *State v. Bailey*, 213 S.W.3d 907, 912 (Tenn. Crim. App. 2006). In *Bailey*, the trial court ruled that the defendant was competent and, as a consequence, failed to make any findings concerning whether the defendant qualified for judicial commitment and "whether there was a substantial probability that the defendant will become competent to stand trial in the foreseeable future." *Id*. at 911 (citing T.C.A. § 33-7-301(c)).

Likewise, in this case, although Doctor Moore testified that the defendant was not eligible for judicial commitment and that he could not be educated to competency, the trial court did not accredit Doctor Moore's opinion and made no findings relating to those issues. Accordingly, just as in *Bailey*, "if this court agreed with the defendant that the trial court had erred in determining that he was competent to stand trial, we would not dismiss the matter . . . , but, instead, remand it to the trial court to follow the procedures set out in Tennessee Code Annotated section 33-7-301." *Id.* at 911-12. Therefore, this issue is not dispositive of the case.

Because the defendant failed to meet the certification requirements of Rule 37(b)(2)(A) and because the issue raised is not dispositive of the case, this court is without jurisdiction to review the issue. The appeal is dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2] We also note that the judgment failed to incorporate by reference the March 3 order. Therefore, even if the notice of appeal had not intervened, the March 3 order would have failed to comply with the *Preston* requirements.