# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 24, 2010 Session

## STATE OF TENNESSEE v. LLOYD ANDRA WEBB

**Appeal from the Blount County Circuit Court**
**No. C-17350     Jon Kerry Blackwood, Senior Judge**

**No. E2009-02135-CCA-R3-CD - Filed February 11, 2011**

The Defendant, Lloyd Andra Webb, pled guilty to possession with intent to sell twenty-six grams or more of cocaine, a Class B felony, and to possession of marijuana, a Class A misdemeanor. See T.C.A. §§ 39-17-417 (2010); 39-17-418 (2010). He was sentenced as a Range I, standard offender to nine years for the  possession with intent to sell conviction and to eleven months, twenty-nine days for the misdemeanor possession conviction, to be served concurrently. He was order to serve fifteen weekends in the Blount County Jail with the balance of his sentences on community corrections. The Defendant's plea agreement reserved a certified question of law regarding the legality of the traffic stop that led to his arrest. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

A. Philip Lomonaco, Knoxville, Tennessee, for the appellant, Lloyd Andra Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Senior Counsel; Mike Flynn, District Attorney General; and Kathy Aslinger, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a traffic stop during which cocaine and marijuana were discovered on the Defendant. The Defendant was arrested on September 30, 2008, for possessing twenty-six grams or more of cocaine with intent to sell and for possessing marijuana. After he was indicted, he filed a motion to suppress, alleging that the law enforcement officer who

stopped him lacked reasonable suspicion or probable cause to stop him and detained him longer than necessary to effectuate the purpose of the stop.

At the suppression hearing, Blount County Sheriff's Deputy Brandon Hall testified that he was sitting at the corner of Grade Road and Cusick Road when he noticed the Defendant's car, which had tinted windows. He said he could see the Defendant through the car's untinted windshield. He said he stopped the Defendant because he was concerned that the window tint was too dark and because the Defendant was not wearing a seatbelt. He said he saw the Defendant's car at a known "drug house"about fifteen minutes before he initiated the traffic stop. He said the owner of the house and people coming from the house had been charged with drug offenses.

Deputy Hall testified that he informed the Defendant why he stopped him and asked the Defendant for his license, registration, and proof of insurance. He said the Defendant claimed to have removed his seatbelt shortly before being stopped. He said the Defendant was extremely nervous, appeared disoriented, and shuffled papers. He said the Defendant produced his license and registration but was unable to find his insurance card. He said he returned to his police car to verify the Defendant's license and registration. He said he spoke with Deputy Gary Perkins as he waited in his car because he had a question regarding window tint. He said he asked Deputy Perkins to come to the scene. He said that he returned to the Defendant's car and that the Defendant provided his proof of insurance. He said that despite telling the Defendant that he would only receive a warning, the Defendant remained extremely nervous. He said people typically calmed down when told they would receive a warning. He said he began writing a warning citation in his police car but completed the citation on the trunk of his car in order to observe the Defendant's behavior. He said he intended to have the Defendant sign the citation on the hood of his police car in order to observe the Defendant. He said the Defendant did not sign the citation until they were at the police station.

Deputy Hall testified that Deputy Perkins arrived before he finished filling out the citation and that he completed the citation while Deputy Perkins spoke with the Defendant. He said he laid the completed citation on the hood of his car and approached the Defendant's car to see what Deputy Perkins was doing. He said that Deputy Perkins asked the Defendant for permission to have his police dog sniff the interior of the car but that the Defendant did not consent. He said the Defendant left his car without being asked to do so and began walking around nervously as if preparing to run. He said that the Defendant had a paper bag and a drink in his hands and that the Defendant asked to throw them away. He said the Defendant's hand was shaking and causing the drink to spill. He said he asked the Defendant to walk to the hood of his patrol car to sign the citation. He said he decided to administer a pat-down to ensure his safety after watching the Defendant's nervous behavior. He said he

did not know if the Defendant had a weapon. He said the Defendant would not comply with the pat-down and repeatedly moved his hands toward his waist. He said that the Defendant broke free and ran and that he and Deputy Perkins chased the Defendant and took him into custody. He said they found a large amount of drugs in the Defendant's waistband.

On cross-examination, Deputy Hall agreed that at the time he stopped the Defendant's car, he had been a patrol officer for about one month. He agreed that when he first saw the Defendant's car, his view was partially blocked by a parked semi-trailer. He said that despite the obstructed view, he could see that the Defendant was not wearing a seatbelt over his white t-shirt. He denied that he initiated the traffic stop because the Defendant's car was recently seen at a known drug house. He agreed he was trained not to look away from persons suspected of being dangerous. He agreed that he turned his back on the Defendant when he walked to his police car to verify the Defendant's license and registration, but he said this was a mistake. He agreed that he spoke with Deputy Perkins, that he asked him about the legality of the Defendant's window tint, and that he told Deputy Perkins the Defendant shook "like a leaf." He agreed he did not mention the seatbelt violation to Deputy Perkins, but he said he told Deputy Perkins that the Defendant was very nervous and that he saw the Defendant's car at a known drug house shortly before the traffic stop. He said he had investigated the house and arrested people there during his police training. He admitted that he did not see the Defendant at the drug house and that the car was registered to the Defendant's brother.

Deputy Hall agreed that he decided to give the Defendant a warning because he wanted to see the Defendant's reaction and whether the Defendant would calm down. He agreed he delayed giving the citation to the Defendant in order to allow Deputy Perkins to investigate whether the Defendant committed or was committing a crime. He said he did not want to interrupt Deputy Perkins or make him take his eyes off the Defendant. He said he was not asked to delay giving the citation to the Defendant.

Deputy Hall testified that he administered a pat-down to ensure his and Deputy Perkins's safety after watching the Defendant's odd behavior, not because he suspected that the Defendant had committed a crime. He said it was unusual at a traffic stop for a person to attempt to walk away from the police in order to throw out trash. He said that although he believed the Defendant was attempting to find a place to run, the Defendant walked to the hood of his police car when asked to do so.

On redirect examination, Deputy Hall agreed he did not have a card used to measure window tint at the time of the stop, but he said Deputy Perkins did have such a card. He said the Defendant's behavior made him suspicious that the Defendant was hiding something, and he agreed he suspected the Defendant of criminal activity.

On re-cross examination, Deputy Hall said that the Defendant would not follow commands and walked in circles outside his car. He agreed that the Defendant was not committing a crime at that time but said that he did not know if the Defendant was preparing to do so.

Blount County Sheriff's Deputy Gary Perkins testified that he worked with a police dog trained to detect narcotics and that he had received special training with the dog in narcotics investigation. He said people's actions and body language could indicate they possessed narcotics. He said that he spoke with Deputy Hall to check the status of the traffic stop and that he was asked to come to the scene of the stop. He said Deputy Hall told him the Defendant's name and that he had seen the Defendant's car at a known drug house on Grade Road shortly before stopping the Defendant. He said he recognized the Defendant's name because it had been mentioned to him by a confidential informant. He said the informant provided reliable information in the past regarding persons selling narcotics and when sales would occur. He said the informant told him that the Defendant delivered drugs to a known drug house on Grade Road. He said he was familiar with the drug house on Grade Road because he had executed search warrants there and had arrested persons coming from the house for possessing crack cocaine and marijuana.

Deputy Perkins testified that when he arrived at the traffic stop, Deputy Hall was writing the citation. He said Deputy Hall gave him permission to speak with the Defendant while Deputy Hall finished writing the citation. He said he asked the Defendant if he had weapons or illegal substances in the car and if he would allow a police dog to sniff his car. He said the Defendant was nervous and shook uncontrollably. He said the Defendant's hand shook so hard that he spilled a drink he was holding even though the cup was not full. He said the Defendant gave him permission to walk the dog around the outside of the car but not to search inside the car. He said the Defendant stepped out of his car without being asked to do so. He said that the Defendant was incoherent, that he did not follow commands to move toward Deputy Hall's police car, and that he walked in circles. He said the Defendant's unusual behavior indicated that the Defendant was looking for a place to run. He said he was concerned that the Defendant might have a weapon or drugs. He said that the Defendant wore baggy clothing capable of hiding a weapon and that he would have administered a pat-down if Deputy Hall had not. He said the Defendant repeatedly dropped his arms during the pat-down and eventually ran.

Deputy Perkins testified that he caught the Defendant and that he did not lose sight of the Defendant during the chase. He said that as he wrestled the Defendant to the ground, the Defendant attempted to keep his hands near his stomach. He said he found small bags of marijuana in the Defendant's pocket and a sock containing four bags of cocaine under the

Defendant's stomach. He said the Defendant told him that he ran because he had marijuana but that the sock was not his.

On cross-examination, Deputy Perkins testified that he had not interacted with the Defendant before the traffic stop. He said he was not investigating the Defendant or the house on Grade Road at the time of the traffic stop. He agreed that he did not execute a search warrant at the house until after the traffic stop and that he did not know of other agents who searched the home at that time. He said that at the time of the traffic stop, the home was a known drug house because confidential informants had indicated that drugs were there and because he had stopped vehicles coming from the house. He admitted that if he saw a car leave the house, he would initiate a traffic stop if he had probable cause. He agreed that before he arrived at the scene of the traffic stop, Deputy Hall told him that he saw the Defendant's car at the house.

Deputy Perkins testified that Deputy Hall was writing the citation when he arrived. He agreed that Deputy Hall "backed off" and allowed him to speak with the Defendant. He said he explained to the Defendant the procedure involved when a police dog sniffs a car. He said that he told the Defendant he would need to exit the car in order for the dog to sniff it but that the Defendant stepped out of the car before being asked to do so.

Deputy Perkins testified that the Defendant's actions indicated that he was hiding something. He agreed he did not suspect that the Defendant was hiding something until after he began speaking with the Defendant. He said his suspicion was based upon the Defendant's actions and his prior knowledge of the Defendant. He said confidential informants provided him with general information regarding the Defendant, but he agreed that he did not have information that the Defendant had narcotics in his car on the day of his arrest.

The trial court denied the Defendant's motion to suppress. The trial court found that before Deputy Perkins arrived at the scene of the traffic stop, Deputy Hall told him that the Defendant's car was seen at a home known for drug activity and that the Defendant was acting in a "suspiciously nervous manner." The trial court found that a confidential informant previously mentioned the Defendant's name to Deputy Perkins regarding drug activity. The trial court found that Deputy Perkins arrived at the scene of the traffic stop two to three minutes after speaking with Deputy Hall and that he arrived before Deputy Hall completed the warning citation. The court also found that Deputy Hall had just completed the citation when Deputy Perkins engaged the Defendant. The Defendant pled guilty after the motion to suppress was denied. On October 13, 2009, the trial court filed an order setting forth that the plea was subject to the following dispositive, certified question of law:

Whether the law enforcement officer had probable cause or reasonable suspicion to stop the Defendant's vehicle, and, if so, whether the continued detention became unreasonably delayed and exceeded the lawful scope of the traffic stop such that the subsequent seizure of cocaine should be suppressed.

**I**

Initially, the State contends that the Defendant has failed to comply with the prerequisites for appellate review of a certified question of law. The State argues that the certified question is not dispositive of the case because it does not seek suppression of the marijuana found on the Defendant. The Defendant asserted at oral argument that the certified question contained a clerical error and that it should have sought suppression of all "drugs" or "narcotics" found on the Defendant, instead of only seeking suppression of cocaine. We conclude that the Defendant's conviction for possession of marijuana is not properly before this court because the suppression of marijuana goes beyond the scope of the certified question of law. We hold, however, that the certified question is dispositive with regard to the Defendant's conviction for possession with intent to sell twenty-six grams or more of cocaine.

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from a plea of guilty if the defendant enters into a plea agreement but explicitly reserves with consent of the state and the trial court a certified question of law that is dispositive of the case and satisfies four additional requirements. See Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. An issue is never dispositive when we might reverse and remand . . . ." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Furthermore, we are not bound by the trial court's determination that an issue is dispositive. State v. Preston, 759 S.W.2d 647, 651 (Tenn. 1988). Rather, we are required to make an independent determination of the dispositive nature of the question reserved, and appellate review must be denied if the record does not clearly demonstrate how the question is dispositive. Id.

Regarding the Defendant's conviction for possession of marijuana, although the Defendant argues that the certified question contained a clerical error and should have stated "drugs" or "narcotics" instead of "cocaine," he does not explain the cause of the error or why it was not corrected before he filed his notice of appeal. See Tenn. R. Crim. P. 36 (stating that the trial court may correct clerical mistakes in the judgment, orders, or other parts of the record); State v. Pendergrass, 937 S.W.2d 834, 837-38 (Tenn. 1996) (stating that although the trial court retains limited power to correct clerical mistakes in judgments and other errors in the record arising from oversight or omission, this power is lost upon the filing of a notice

of appeal because jurisdiction transfers to the appellate court). The burden is on the defendant to satisfy all mandatory prerequisites of Rule 37 of the Tennessee Rules of Criminal Procedure in order to file an appeal following a guilty plea. See Pendergrass, 937 S.W.2d at 837. As a result, this court will not consider the seizure of marijuana or the resulting conviction for possessing marijuana. See State v. Day, 263 S.W.3d 891, 899-900 (Tenn. 2008) (stating that appellate courts will not consider an issue that goes beyond the scope of the certified question of law and that a defendant must clearly identify the scope and limits of an issue intended to be preserved by a certified question).

As for the Defendant's conviction for possession with intent to sell twenty-six grams or more of cocaine, the State argues that the certified question is not dispositive because the Defendant's case includes convictions for possession of marijuana and possession with intent to sell cocaine. The State notes that Tennessee Code Annotated section 16-1-117 defines "criminal case" as "a single charge or set of charges arising out of a single incident involving the same victim or victims concerning a defendant in one (1) court proceeding. An incident shall be all criminal activity occurring within a twenty-four-hour period." The State argues that because the certified question does not seek the suppression of marijuana, it cannot be considered dispositive of the case because all charges will not be dismissed if the traffic stop or continued detention is found to be improper.

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). With this guiding principle in mind, we note that the definition of the term "case" advanced by the State is taken from a section of the Tennessee Code addressing caseload statistics reporting and automated court information systems, not certified questions of law. This court has interpreted the meaning of the word "case" in other contexts and held that a multi-count indictment represents multiple criminal cases. See State v. Gerald Gifford, No. E2006-02500-CCA-R3-CD, Hamilton County, slip op. at 5 (Tenn. Crim. App. Apr. 23, 2008), app. denied (Tenn. Oct. 27, 2008). In Gerald Gifford, this court reasoned that:

> it is fundamental that each count of an indictment represents a separate criminal charge, or case, and that a conviction under each count of the indictment requires a separate judgment of conviction. In State v. Russell, 800 S.W.2d 169, 172 (Tenn.1990), our supreme court, citing Usary v. State, 172 Tenn. 305, 112 S.W.2d 7 (1938), observed that "[e]ach count in an indictment is, in legal contemplation, a separate indictment; each count must be a complete indictment in itself." As such, we

-7-

construe the term "case" to mean each individually numbered count or criminal offense alleged within the indictment.

Id. Furthermore, this court has held that a certified question may fail to address one conviction but may be dispositive of the remaining convictions. See State v. Russel B. Cain, M2009-00754-CCA-R3-CD, Wilson County, slip op. at 4 (Tenn. Crim. App. June 30, 2010) ("The State argues that because . . . the certified question does not account for the first conviction, it cannot be considered dispositive because all charges will not be dismissed. However, the question presented is dispositive as to the other two convictions, and we will review the question as presented."), app. denied (Tenn. Dec. 7, 2010). We agree with the reasoning set forth in Gerald Gifford and construe the term "case" as used in Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure to mean that a certified question of law must be dispositive as to the criminal offense and resulting conviction being challenged on appeal.

The record reflects that the cocaine seized during the traffic stop is the only evidence supporting this conviction. If the legality of the initial stop and of the continued detention are upheld, this court would be required to affirm the judgment of conviction. If the initial stop or the continued detention is found to be improper and the cocaine is inadmissible, this court must reverse the judgment of conviction and dismiss that charge. As a result, we hold that the Defendant's certified question is dispositive with regard to his conviction for possession with intent to sell twenty-six grams or more of cocaine and is properly before this court.

**II**

The Defendant contends that the trial court erred in denying his motion to suppress because he was detained longer than necessary for the police officers to complete the purpose of the original traffic stop. He argues that the officers did not have reasonable suspicion to continue detaining him after completing a warning citation. The State contends that the Defendant's motion to suppress was properly denied because the initial traffic stop was supported by reasonable suspicion, the Defendant's detention was not unreasonably extended, and the officers had reasonable suspicion to detain him after completing the traffic citation. We agree with the State.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928

S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "'article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. See Katz v. United States, 389 U.S. 347, 357 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Evidence discovered as a result of a warrantless search or seizure is subject to suppression unless the State establishes that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

An exception to the warrant requirement exists when a police officer conducts an investigatory stop based on a reasonable suspicion that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21 (1968); Binette, 33 S.W.3d at 218. Reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity[.]" Binette, 33 S.W.3d at 218 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). Reasonable suspicion is determined based upon the totality of the circumstances of the encounter. Binette, 33 S.W.3d at 218 (citing Alabama v. White, 496 U.S. 325, 330 (1990)). The police may stop a vehicle if they have either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants are subject to seizure for violation of the law. See Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). An officer's subjective intention for stopping a vehicle is irrelevant, as long as independent grounds exist for the detention. See Whren v. United States, 517 U.S. 806 (1996); State v. Vineyard, 958 S.W.2d 730 (Tenn. 1997).

When a traffic stop is initiated based on probable cause or reasonable suspicion, a resulting investigation is reviewed under the framework established in Terry v. Ohio. See United States v. Brignoni-Ponce, 422 U.S. 873 (1975). Such investigations require that an officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. The detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop." Florida v. Royer,

460 U.S. 491, 500 (1983); See State v. England, 19 S.W.3d 762, 767-68 (Tenn. 2000). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Royer, 460 U.S. at 500. "The proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998) (citation omitted). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into one which violates the Fourth Amendment and article 1, section 7. United States v. Childs, 256 F.3d 559, 564 (7th Cir. 2001); see also State v. Morelock, 851 S.W.2d 838, 840 (Tenn. Crim. App. 1992).

In the context of determining whether investigative methods run afoul of the Fourth Amendment and article 1, section 7, this court has stated that "requests for driver's licenses and vehicle registration documents, inquiries concerning travel plans and vehicle ownership, computer checks, and the issuance of citations are investigative methods or activities consistent with the lawful scope of any traffic stop." State v. Gonzalo Garcia, No. M2000-01760-CCA-R3-CD, Davidson County, slip op. at 22 (Tenn. Crim. App. Feb. 20, 2002) (citing United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000)). A law enforcement officer making a constitutionally permissible traffic stop must not prolong the stop for longer than necessary to process the traffic violation without having a reasonable suspicion of other criminal activity sufficient to warrant prolonging the stop. State v. Harris, 280 S.W.3d 832, 842 (Tenn. Crim. App. 2008) (citing State v. Walker, 12 S.W.3d 460, 464 (Tenn. 2000)).

We note that the Defendant has not addressed the initial traffic stop in this appeal and appears to have abandoned his argument that the initial traffic stop was illegal. In any event, this issue is without merit. Deputy Hall testified that he stopped the Defendant's car because he was concerned that the window tint was too dark and because the Defendant was not wearing a seatbelt, each of which is a violation of Tennessee law. See T.C.A. §§ 55-9-107(a)(1)(A); 55-9-603(a)(1). Because Deputy Hall had probable cause to believe that the Defendant was subject to seizure for violation of the law, the initial traffic stop was proper. See Harris, 280 S.W.3d at 839 (holding that a police officer had probable cause to stop a car when the officer saw the defendant driving while not wearing a seatbelt).

With regard to the duration of the traffic stop, the record reflects that after stopping the car, Deputy Hall asked the Defendant for his license, registration, and proof of insurance. Deputy Hall said the Defendant was extremely nervous, appeared disoriented, and shuffled papers. Deputy Hall returned to his police car to verify the Defendant's license and registration and spoke with Deputy Perkins as he waited in his car. Deputy Perkins arrived before the citation was completed and engaged the Defendant as the citation was being

completed. Deputy Hall laid the completed citation on the hood of his patrol car and approached the Defendant's car, but he delayed giving the citation to the Defendant in order to allow Deputy Perkins to investigate whether the Defendant had committed or was committing a crime. At this point, the purpose for the traffic stop was complete and the deputies needed a reasonable suspicion of other criminal activity to prolong the traffic stop. See Harris, 280 S.W.3d at 842.

This court has held that a defendant's nervous behavior, accompanied only by an officer's knowledge of the defendant's prior criminal history, was not sufficient to create reasonable suspicion necessary to expand the scope of a traffic stop. See State v. Joshua Caleb Simmons, No. M2008-00107-CCA-R3-CD, Van Buren County, slip op. at 7 (Tenn. Crim. App. Aug. 5, 2009). This court, however, has held that an officer's prior knowledge of a defendant's criminal history or reputation, in addition to nervousness and other factors, can give rise to reasonable suspicion to detain a defendant further. See, e.g., State v. Robert Lee Hammonds, No. M2005-01352-CCA-R3-CD, Sumner County, slip op. at 9, 12 (Tenn. Crim. App. Nov. 29, 2006) (holding that there was reasonable suspicion when the officer knew the defendant's reputation as a drug user and dealer and the defendant was nervous, present in a high crime area, and lacked candor regarding his criminal history).

Considering these cases, we hold that at the time Deputy Hall completed the citation, Officer Perkins had reasonable suspicion to delay the Defendant and briefly investigate whether the Defendant had committed or was committing a crime. The record reflects that before arriving at the traffic stop, Deputy Perkins was told that the Defendant was extremely nervous and shaking. He was also told that Deputy Hall saw the Defendant's car at a known drug house on Grade Road shortly before the traffic stop. Deputy Perkins was familiar with the house because he had arrested persons coming from it for possessing crack cocaine and marijuana. Deputy Perkins recognized the Defendant's name because a reliable confidential informant had previously told him that the Defendant delivered drugs to the house on Grade Road. Deputy Perkins approached the Defendant and noticed that he was nervous and shaking uncontrollably. The facts known to Deputy Perkins regarding the Defendant's drug-related activities at the house on Grade Road, the Defendant's car being recently seen at the house, and the Defendant's extremely nervous behavior were sufficient to create a reasonable suspicion that the Defendant had committed or was committing a crime. We conclude the traffic stop was not unreasonably delayed such that the subsequent seizure of cocaine should be suppressed. The Defendant is not entitled to relief on this issue.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE