IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

## STATE OF TENNESSEE v. BILLY JOE HODGE

**Appeal from the Circuit Court for Madison County**
**No. 15-152    Kyle Atkins, Judge**

_____

### No. W2016-01009-CCA-R3-CD

_____

Defendant, Billy Joe Hodge, was indicted by the Madison County Grand Jury for one count of possession of 0.5 grams or more of methamphetamine with intent to sell; possession of 0.5 grams or more of methamphetamine with intent to deliver; possession of marijuana; and possession of drug paraphernalia. Defendant filed a pretrial motion to suppress the evidence seized during a search of his home and person. Following a hearing, the trial court denied Defendant's motion, and Defendant entered guilty pleas to all four counts. The possession of methamphetamine with intent to sell and the possession of methamphetamine with intent to deliver were "merged" by the trial court, but the merger was not done in compliance with *State v. Berry*, 503 S.W.3d 360 (Tenn. 2015). Defendant reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the search of his home by law enforcement was lawful. After review, we conclude that exigent circumstances did not justify the warrantless search of Defendant's home. However, we conclude that there was probable cause for the issuance of a subsequent search warrant. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Christie Hopper, Jackson, Tennessee, for the appellant, Billy Joe Hodge.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; James G. Woodall, District Attorney General; and Nina Seiler, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual and procedural background*

At the hearing on Defendant's motion to suppress, Investigator Tikal Greer, a narcotics investigator with the Jackson City Police Department Narcotics Unit, testified that on May 21, 2014, he was informed by Sergeant Hallenback of the Endangered Child's Unit that a runaway female juvenile was at Defendant's residence. Sergeant Hallenback asked Investigator Greer to go to Defendant's home to try to locate the juvenile and advised him that the juvenile was diabetic and had not "been on her insulin in a couple of days." Investigator Greer and four or five other officers went to Defendant's home. Two officers were on the front porch with a co-defendant, "Mr. Johnson." Investigator Greer testified that he did not interact with Mr. Johnson "because at that point we had already had photographs of [Defendant], so I knew the actual owner and who the residence went back to."

Investigator Greer, Sergeant Anderson, and Investigator Gilley went to the side door and knocked. Defendant answered the door, and Investigator Greer "smelled the odor of raw marijuana coming from inside the residence." Investigator Greer explained why he was there and asked Defendant if anyone was inside the residence. Defendant stated that he knew the juvenile, and he stated that she was not inside his residence. Defendant initially denied that anyone else was inside, but he then told Investigator Greer that there was a female inside. Investigator Greer testified that Defendant would not identify the person or state whether she was an adult or a juvenile.

Investigator Greer and the other officers "started calling in, trying to get those individuals to come outside to us." He testified, "I believe it was four or five times we actually yelled[,]" and no one exited the residence. Investigator Greer asked Defendant for consent to enter the residence "to see if this juvenile is actually in there," and Defendant denied consent. Investigator Greer testified, "[a]t that point we placed him to the side. Again we called in, and at that point we entered the residence."

Investigator Greer testified, "based on my experience I believed that that juvenile was in there. And since she was a diabetic patient, she may have passed out or be unresponsive." Once inside the residence, officers encountered an adult female coming out of Defendant's bedroom. Officers escorted the female outside, and they did not locate anyone else inside the residence. While inside the residence, officers found a digital scale, a bag of marijuana, and a bag of methamphetamines on a table in Defendant's bedroom. Investigator Greer took Defendant into custody and officers found "two baggies of methamphetamine ice" on Defendant's person during a pat down search. Investigator Greer subsequently obtained a search warrant to search Defendant's home

for "illegal controlled substance[s]." Investigator Greer executed the search warrant and seized the scale, marijuana, methamphetamine, additional prescription pills, and "some other drug paraphernalia."

On cross-examination, Investigator Greer testified that he did not recall how long it took to obtain the search warrant in this case, but that it normally takes "[m]aybe a[n] hour-ish, if that, to try to go write it up back at the office, contact the Judge, go meet the Judge, and come back to that scene." He described the layout of the home and testified that the side door entered a laundry area. He testified that the laundry area connected to the kitchen by a doorway, and to the left of the kitchen, "I believe you go into – down some stairs into a bedroom." Investigator Greer testified that Defendant appeared "nervous, jittery."

At the conclusion of the hearing, the trial court found Investigator Greer to be "a credible witness who has many years of experience as a police officer, as a member of the Drug Task Force, and that when he approached the house looking for the female he encountered [Defendant], who was evasive and was not forthright in answering his questions." The court concluded, "that's a rational and reasonable inference for [Investigator Greer] to make, that there's a minor without her medication who could possibly be in an emergency situation as a result of her lack of insulin, which gave him exigent circumstances under the totality of the circumstances in this case to enter." Additionally, the trial court found that the smell of marijuana gave officers probable cause to obtain a search warrant for the residence. In its written order denying Defendant's motion, the trial court stated as follows:

> The Court found the following factors contributed to the totality of the circumstances to form the requisite exigent circumstances justifying the warrantless search of Defendant's residence: Inv[estigator] Greer's search for a[n] endangered runaway juvenile, who suffers from diabetes and was reported to not have access to her insulin for several days; the Defendant's evasive answers to Inv[estigator] Greer's questioning; the Defendant's acknowledgement that a female was present inside the residence, who did not exit the residence upon Inv[estigator] Greer's request.
>
> Additionally, independent of the exigent circumstances making the warrantless search reasonable, Inv[estigator] Greer testified to the odor of marijuana coming from inside the residence when the Defendant opened the door. This provided probable cause for the search warrant Inv[estigator] Greer obtained to conduct a full search of the residence, wherein narcotics were located. The description of the odor emanating

from the residence was described in the affidavit in support of the search warrant, entered as an exhibit to the [hearing].

Defendant subsequently pleaded guilty to all four counts of the indictment in exchange for an effective sentence of six years in confinement to be suspended on Community Corrections. Defendant reserved the following certified question of law:

> Whether law enforcement officers with the Metro Narcotics Unit lawfully entered the Defendant's residence in violation of the Defendant's Fourth Amendment rights, in that the assertion that the officers were searching for a missing diabetic juvenile did not constitute an exigent circumstance for entry into the Defendant's home, and/or nor was the assertion that the officer smelled marijuana while standing at the Defendant's side door sufficient probable cause to obtain a search warrant into the Defendant's residence, requiring suppression of any evidence obtained thereafter?

*Analysis*

Defendant argues that exigent circumstances did not justify officers' warrantless entry into his home because Investigator Greer's conclusion that the juvenile was inside the home was based on speculation. The State argues that the exigent circumstances exception to the warrant requirement applied because the facts available to Investigator Greer allowed him to make an objectively reasonable inference that the juvenile was inside Defendant's home and in need of medical attention.

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This court must make an independent determination that the certified question is dispositive. *Id*. at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)). Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment of conviction occurring as the result of a guilty plea if a

- 4 -

dispositive question of law is properly certified and reserved. *State v. Long*, 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;
>
> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *State v. Preston*, our Supreme Court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)." 759 S.W.2d 647, 650 (Tenn. 1988). First, the final order or judgment appealed from must contain a statement of the dispositive question of law reserved for review. *Id*. The question must clearly identify the scope and limits of the legal issue and must have been passed upon by the trial judge. *Id*. Second, the order must also state that: (1) the certified question was reserved as part of the plea agreement; (2) the State and the trial judge consented to the reservation; and (3) both the State and the trial judge agreed that the question is dispositive of the case. *Id*. Third, the defendant bears the burden of "reserving, articulating, and identifying the issue" reserved. *State v. Troy Lynn Woodlee*, No. M2008-01100-CCA-R3-CD, 2010 WL 27883, at *2 (Tenn. Crim. App., Jan. 6, 2010), *perm. app. denied* (Tenn., May 20, 2010) (citing *Preston*, 937 S.W.2d at 838). Failure to properly reserve a certified question of law pursuant to the requirements stated in *Preston* will result in the dismissal of the appeal. *Woodlee*, 2010 WL 27883, at *2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)). The importance of complying with the *Preston* requirements has been reiterated by our Supreme Court in *State v. Armstrong*, 126 S.W.3d 908, 913 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the

defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37.

In the case under submission, Defendant's issue on appeal meets these requirements: he pleaded guilty; the judgment forms referenced the reservation of a certified question; the addendum referenced in the judgment forms contains a statement of the certified question of law and states that it is reserved with the express consent of the trial court and the State and that all parties and the trial court agree that it is dispositive of the case. We agree that the question included in the addendum attached to Defendant's judgment form is stated so as to identify clearly the scope and limits of the legal issue reserved and is dispositive of the case. Thus, we conclude that the issue is properly before this court.

*Legality of Search and Seizure*

Defendant argues that the warrantless search of his residence and subsequent seizure of evidence was not conducted pursuant to a valid exception to the warrant requirement. He contends that exigent circumstances did not justify warrantless entry into his home because Investigator Greer's conclusion that the juvenile was inside the home was based on speculation. Defendant also contends that the independent source doctrine does not validate the search because the affidavit supporting the search warrant was based on evidence found in the home during the officers' "illegal entry."

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 630 (Tenn. 1997). It is the State's burden to demonstrate, by a preponderance of the evidence, that a warrantless search passes constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

An exception to the warrant requirement exists for exigent circumstances. *State v. Reynolds*, 504 S.W.3d 283, 304 (Tenn. 2016) (citing *Mincey v. Arizona*, 437 U.S. 385, 392-93, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)).

> Exigent circumstances are those in which the urgent need for immediate action becomes too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant. Thus, in assessing the constitutionality of a warrantless search, the inquiry is whether the circumstances give rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant. The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the governmental actor at the time of the [search]. Mere speculation is inadequate; rather, the State must rely upon specific and articulable facts and the reasonable inferences drawn from them. The circumstances are viewed from an objective perspective; the governmental actor's subjective intent is irrelevant. The manner and the scope of the search must be reasonably attuned to the exigent circumstances that justified the warrantless search, or the search will exceed the bounds authorized by exigency alone. Where the asserted ground of exigency is risk to the safety of the officers or others, the governmental actors must have an objectively reasonable basis for concluding that there is an immediate need to act to protect themselves and others from serious harm.

*State v. Meeks*, 262 S.W.3d 710, 723-24 (Tenn. 2008) (footnotes omitted).

The State must show that the search is imperative, *Meeks*, 262 S.W.3d at 723, and there is no time for law enforcement to secure a warrant. *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013). Exigency is determined on a fact-

intensive, case-by-case basis. *Id*. at 1564. In making this determination, we consider the totality of the circumstances to determine whether a law enforcement officer was justified in acting without a warrant. *Id*.

We cannot conclude, based on the record before us, that the State met its burden of establishing that the circumstances surrounding the search were so compelling that law enforcement officers did not have time to obtain a search warrant. Initially, we note that the officers took time to determine who the owner of the property was and obtain a photograph of Defendant before going to Defendant's home, which undermines the State's assertion that the warrantless entry was imperative. We agree with Defendant that Investigator Greer's conclusion that the runaway juvenile was inside Defendant's home and that "she was a diabetic patient, [and] she may have passed out or be unresponsive[,]" was speculative. Investigator Greer testified that his conclusion was "based on his experience" as a narcotics investigator. The only evidence offered by the State in support of this conclusion was Investigator Greer's testimony that another officer, "Sergeant Hallenback," who did not testify at the hearing, "advised [him] that this juvenile was at this residence and if we could, go by there and see if we could locate her." Investigator Greer testified Sergeant Hallenback also "advised that she was a diabetic and she hasn't been on her insulin in a couple of days." Investigator Greer's speculation that the juvenile was inside the home was based in part on Defendant's evasiveness in answering his questions. Investigator Greer "asked [Defendant] was there anyone else in the house and he said yes. He said there was a female inside the house along with his friend." When Investigator Greer asked Defendant the identity of the female inside, "he became very vague, evasive." Although Defendant did not tell the officers who the woman was, he had already told them that the juvenile was not inside the home. We conclude that the warrantless entry by officers into Defendant's home was in violation of the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution.

Defendant also asserts that the independent source doctrine does not validate the search because the search warrant was tainted by facts gathered as a result of the "illegal entry" into his home. Pursuant to the independent source doctrine, "an unconstitutional entry does not compel exclusion of evidence found within a home if that evidence is subsequently discovered after execution of a valid warrant obtained on the basis of facts known entirely independent and separate from those discovered as a result of the illegal entry." *State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992). In order for evidence discovered during the execution of the subsequent search warrant to be found independent of the prior unconstitutional entry, information obtained during the unlawful entry must not have been presented to the issuing magistrate. *Id*. (citing *Murray v. United States*, 487 U.S. 533, 542, 108 S. Ct. 2529, 2535, 101 L. Ed. 2d 472 (1988).

The State argues that this issue is outside the scope of the certified question. The "question of law must be stated so as to clearly identify the scope and the limits of the legal issues reserved . . . [and] [n]o issue beyond the scope of the certified question will be considered." *Preston*, 759 S.W.2d at 650; *see also State v. Day*, 263 S.W.3d 891, 898 (Tenn. 2008).

The certified question does not make any mention of the independent source doctrine or that information obtained during the unlawful entry was contained in the affidavit in support of the search warrant. Rather, the certified question asks whether "the assertion that the officer smelled marijuana while standing at the Defendant's side door sufficient probable cause to obtain a search warrant into the Defendant's residence . . . ." The trial court concluded that the odor of marijuana provided probable cause to obtain the search warrant. We agree with the State that Defendant's assertion that the search and seizure pursuant to the search warrant violated the independent source doctrine is not in the certified question and cannot be addressed by this court no matter how meritorious the issue might be. Therefore, Defendant can get no relief on this issue.

"Probable cause generally requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006). "'Probable cause must be more than a mere suspicion.'" *State v. Echols*, 382 S.W.3d 266, 278 (Tenn. 2012) (quoting *State v. Lawrence*, 154 S.W.3d 71, 76 (Tenn. 2005)). However, "probable cause 'deal[s] with probabilities[,] . . . not technical[ities,] . . . the factual and practical considerations of everyday life on which reasonable and prudent [persons] . . . act.'" *Id.* (quoting *Day*, 263 S.W.3d at 902); *see Brinegar v. United States*, 338 U.S. 160, 175 (1949).

Our case law reflects that probable cause can be based solely on an officer's detection of the odor of marijuana. *See State v. Frederic A. Crosby*, No. W2013-02610-CCA-R3-CD, 2014 WL 4415924, at *8 (Tenn. Crim. App., Sept. 9, 2014) (citing *Hicks v. State*, 534 S.W.2d 872, 874 (Tenn. Crim. App. 1975), *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976), *State v. James C. Leveye*, No. M2003-02543-CCA-R3-CD, 2005 WL 366892, at *3 (Tenn. Crim. App., Feb. 16, 2005), and *State v. Reginald Allan Gillespie*, No. 03C01-9706-CR-00222, 1999 WL 391560, at *3 (Tenn. Crim. App., June 16, 1999). Defendant's argument essentially rises and falls on the credibility of Investigator Greer regarding his detection of the odor of marijuana. Investigator Greer testified that he was trained in narcotics, that he had eight years' experience as a narcotics unit investigator, and that he recognized the smell of raw marijuana coming from inside Defendant's home. The trial court accredited his testimony. As the trier of fact at a suppression hearing, the trial court is in a better position to assess the witness's credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence.

*Odom*, 928 S.W.2d at 23. We will not disturb that credibility finding on appeal. Defendant is not entitled to relief.

We also want to address two matters by dicta, because of the limitations imposed upon us in reviewing appeals involving certified questions of law. In reviewing a certified question of law, we have only three options in which to rule: (1) affirm the judgment(s); (2) reverse the judgment(s) and dismiss the charges; or (3) dismiss the appeal. *See Dailey*, 235 S.W.3d at 134; *see also State v. Walton*, 41 S.W.3d 75, 95 (Tenn. 2001) (the question is dispositive "when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges]."). We *cannot* affirm and remand for any purpose other than to carry out the judgment of affirmance. We cannot reverse and remand other than for dismissal of the charges. Also, we have no power or authority to affirm or reverse with instructions to modify anything. *Id*.

The indictment charged possession with intent to *sell* 0.5 grams or more of methamphetamine in Count 1, and possession with intent to *deliver* 0.5 grams or more of methamphetamine in Count 2. The guilty plea hearing transcript is not in the record. The written plea agreement signed by Defendant shows that he was entering a guilty plea to misdemeanor possession of marijuana, possession of drug paraphernalia, and possession of less than 0.5 grams of methamphetamine with intent "to sell/deliver."

There were four counts in the indictment, but there are only three judgments in the appellate record. One of these judgments, at the top where the specific count of the indictment is supposed to be given, says: "Count: 1, 2 (merge)." For the conviction offense, the judgment states: "§ 39-17-417 – Poss. of Meth. w/Intent to Sell/Deliv. Under .5G." We assume that the trial court merged one of the methamphetamine convictions with the other. However, if this was the intent, it was not done in compliance with our Supreme Court's order in *State v. Berry*, 503 S.W.3d 360 (Tenn. 2015) ("when two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document for each count.").

The second situation we observe is that even though a "tin" with "two baggies of methamphetamine ice" was found on the person of Defendant while he was outside the house, it is not clear from the record how much methamphetamine was in these two baggies, or whether it was included in the methamphetamine which resulted in the felony charges in Counts 1 and 2 of the indictment. The specific search of Defendant's person was not included in the certified question – the plain reading of the question deals only with a search of the house. In his appellate brief, Defendant submits no argument as to why the two baggies of methamphetamine found on Defendant's person while he was outside the house, pursuant to a "pat down," should have been suppressed. The State did not assert in its brief that the certified question of law failed to include all evidence

seized, and therefore was not "dispositive." We are unable to see anything that would allow us to definitely conclude that the certified question was not dispositive. Accordingly, we assume the "two baggies of methamphetamine ice" found on Defendant's person was not included in the methamphetamine included in Counts 1 and 2, and that those counts only included the methamphetamine found inside the home and seized pursuant to the search warrant.

CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

- 11 -