IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 17, 2020

**STATE OF TENNESSEE v. GLENN BROWN AND THOMAS BYRD**

**Appeal from the Criminal Court for Knox County**
**No. 109768   Bobby R. McGee, Judge**

_____

**No. E2019-01618-CCA-R3-CD**

_____

The Defendants, Glenn Brown and Thomas Byrd, were jointly tried before a Knox County Criminal Court jury on a number of drug and gun-related offenses.  At the conclusion of the trial, both Defendants were convicted of possession with the intent to sell/deliver 0.5 grams or more of cocaine within 1000 feet of a school, possession with the intent to sell/deliver a controlled substance analogue, and possession of marijuana.  Defendant Brown was alone convicted of the various gun-related charges, including employment of a firearm during the commission of a dangerous felony having been previously convicted of a felony.  In this consolidated appeal, Defendant Byrd challenges the sufficiency of the evidence in support of his felony convictions and argues that the trial court erred in admitting evidence of his failure to contest the forfeiture of the large amount of cash seized from him.  Defendant Brown challenges the sufficiency of the evidence in support of his felony drug and employment of a firearm during a dangerous felony convictions and argues that the trial court erred in denying his motion to suppress the results of the traffic stop and in issuing inconsistent oral and written jury instructions that prevented unanimity of the verdicts.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gulley, Knoxville, Tennessee (on appeal) and Mary Ward, Knoxville, Tennessee (at trial), for the appellant, Glenn Brown.

J. Liddell Kirk, Knoxville, Tennessee (on appeal) and Joshua Hedrick, Knoxville, Tennessee, for the appellant, Thomas Lenwood Byrd.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On March 28, 2016, Defendant Brown was driving a silver Toyota Highlander at 38 miles per hour in a 25 mile per hour zone in north Knoxville with Defendant Byrd as his passenger when he was stopped by a Knoxville police officer for speeding. Both men appeared nervous, and Defendant Brown told the officer that he was frightened and considering running. When the backup officer arrived, Defendant Brown told him that there was a weapon inside the vehicle and gave the officer consent to search the SUV. The officer found a loaded Smith and Wesson semi-automatic 9-milimeter handgun in the center console area and an eyeglass case with crack and powder cocaine, another powder that field tested as positive for methamphetamine, assorted loose pills, and marijuana underneath the passenger seat. Defendant Byrd was carrying $1,520 in cash, and Defendant Brown had $80 in cash. The Knox County Grand Jury subsequently returned a fifteen-count indictment charging both Defendants with possession of 0.5 grams or more of cocaine with the intent to sell and with the intent to deliver in a drug free school zone, possession of a controlled substance analogue with the intent to sell and with the intent to deliver, simple possession of marijuana, and four counts of possession of a firearm with the intent to go armed during the commission of a dangerous felony. Defendant Brown was charged alone with two counts of unlawful possession of a handgun by a convicted felon and four counts of unlawful possession of a firearm with the intent to go armed during the commission of a dangerous felony, having been previously convicted of a felony.

### Motion to Suppress

On June 14, 2017, Defendant Brown filed a motion to suppress the results of the traffic stop, arguing that the search was unconstitutional because the duration of the stop exceeded that necessary to issue a speeding citation, and he was not advised of his Miranda rights and was unaware he could refuse consent for the search.

At the suppression hearing, Officer Steve Kaufman of the Knoxville Police Department ("KPD") testified that at approximately 7:00 p.m. on March 28, 2016, he was working radar enforcement in the north Knoxville area when he clocked a silver SUV traveling 13 miles per hour over the posted speed limit of 25 miles per hour. He said he

- 2 -

pulled behind the vehicle and turned on his lights to initiate a stop. However, the vehicle continued traveling another block and a half to two blocks before the driver pulled over.

Officer Kaufman testified that Defendant Byrd was in the passenger seat, and Defendant Brown was in the driver's seat. Defendant Byrd gave him an identification card. Defendant Brown told him he did not have his driver's license on him, but he informed him that his name was "Jermaine Fields," and he provided a date of birth. Officer Kaufman stated that he instructed both men to remain in the vehicle and returned to his patrol car to call in the traffic stop and to request backup. While he was on the radio, Defendant Byrd exited the vehicle, and Officer Kaufman ordered him to get back inside. Defendant Brown then exited the vehicle, looked at him, and said, "I'm scared. I'm thinking of running." Officer Kaufman said he responded by telling him to get back in the vehicle and that he would work with him.

Officer Kaufman identified his patrol vehicle's videotape of the stop and narrated portions of it as it was played for the court. He testified that there was an open container of alcohol in the vehicle and that Defendant Byrd, who appeared to be under the influence, kept fidgeting, so he instructed him to sit with his hands on his knees where he could see them. Officer Darren Carden arrived, and Officer Kaufman and Officer Carden approached the vehicle, removed Defendant Brown, and handcuffed him before Officer Carden took him to Officer Carden's patrol vehicle. When Officer Carden informed him that there was a gun inside the SUV, Officer Kaufman asked Defendant Byrd to step out, handcuffed him, and placed him in the back of his own patrol vehicle.

Officer Kaufman testified that Officer Carden told him he had obtained Defendant Brown's consent to search the SUV. Officer Carden searched the vehicle while he was on the radio checking the Defendants' identifications. During the search, Officer Carden found a gun in the center console area and narcotics inside an eyeglass case that was underneath the front passenger seat. On cross-examination, he agreed that Defendant Byrd was not free to leave after he was handcuffed and placed in the back of Officer Carden's patrol vehicle.

At the conclusion of the hearing, the trial court overruled the motion to suppress. Among other things, the court found that the officers did not question Defendant Brown but noted that, regardless, Miranda warnings are not implicated by Fourth Amendment issues. The court further found that Defendant Brown not only gave consent but that exigent circumstances justified the search of the vehicle.

**Trial**

- 3 -

At trial, Officer Kaufman reiterated much of his suppression hearing testimony about the traffic stop that led to the discovery and seizure of the gun, narcotics, and cash. He identified his dashcam video of the stop, portions of which were admitted into evidence, and narrated the action as the video was played for the jury. He testified that Belle Morris Elementary School was approximately a block and a half north of where Defendant Brown pulled over, and he identified on a map the exact location of the stop. He said that Defendant Byrd was "getting very agitated" and "digging in his pockets" while he was seated in the SUV, which prompted Officer Kaufman to instruct him to sit still and keep his hands where he could see them. He testified that Defendant Byrd informed him that he had $3,000 cash on him that he had received from the sale of some automobile rims, but officers found and seized a total of only approximately $1,600 in cash from the two men, with $80 found on Defendant Brown and the rest on Defendant Byrd. Some of the cash found on Defendant Byrd was in his wallet but the "vast majority was in a pants pocket."

On cross-examination by Defendant Byrd's counsel, Officer Kaufman acknowledged that the vehicle belonged to Defendant Brown's girlfriend and that Defendant Byrd was cooperative and provided him with an identification card with his correct name. On cross-examination by Defendant's Brown's counsel, he acknowledged that Defendant Brown was cooperative as well, informing the officers about the gun, providing his real name after initially giving a false name, and giving the officers consent to search the vehicle. He further acknowledged that the console area where the gun was found was accessible to both the driver and the passenger.

KPD Officer Darren Carden testified that when he arrived on the scene, he observed both the driver and the passenger turned around in their seats "digging in the back of the car a little bit." He said he and Officer Kaufman approached the vehicle together, and he asked Defendant Brown to step out of the vehicle. As he was walking the handcuffed Defendant Brown to his patrol vehicle, Defendant Brown told him there was a gun in the SUV, so he quickly patted him down, placed him in the back of his cruiser, and returned to the SUV to inform his partner. After he assisted Officer Kaufman in taking Defendant Byrd into custody, he returned to his cruiser and obtained Defendant Brown's permission to search the vehicle. He stated he found the loaded handgun in the open console area and a small eyeglass case under the front passenger seat that contained "multiple substances of narcotics." He identified his patrol vehicle's video recording of the stop and photographs of the evidence, which were admitted into evidence and published to the jury.

On cross-examination, Officer Carden acknowledged that the handle of the gun was oriented toward the driver's seat with the barrel pointing toward the passenger's seat. On redirect examination, he testified that he found no drug paraphernalia in the vehicle.

- 4 -

KPD Sergeant J.D. Burrell testified that he was the patrol supervisor for the east district and was called to the scene, per departmental policy, to double-check the count of cash seized from the Defendants. According to the currency envelopes, they seized $1,624 from Defendant Byrd, consisting of two $50 bills, 72 $20 bills, one $10 bill, six $5 bills and 44 $1 bills, and $87 from Defendant Brown, consisting of four $20 bills, one $5 bill, and two $1 bills.

KPD Officer Jonathan Gomez, who was formerly a civilian evidence technician, identified photographs he took of the objects found in the vehicle, including the black Smith and Wesson 9-millimeter handgun loaded with eleven 9-millimeter rounds and the narcotics found in the eyeglass case. He said he was unable to lift any prints from the weapon or the ammunition. On cross-examination, he acknowledged that one of his photographs showed a "Swisher Sweets" cigar wrapper inside the vehicle.

KPD Officer Krista Davies, who transported the narcotics to the police department, testified that the evidence consisted of: a green leafy substance that appeared to be marijuana; a hard, yellowish-white rock substance that appeared to be crack cocaine; a brownish, powdery substance that field tested positive for methamphetamine; a white powdery substance that field tested positive for cocaine, and three different kinds of loose pills. She said she was present when Officer Kaufman had Defendant Byrd sign the forfeiture paperwork for the cash, on the back of which is printed the process for contesting the forfeiture. She explained that the process for contesting a forfeiture of property is to file an appeal with the State, which triggers a hearing at which the individual is afforded an opportunity to show that that he or she obtained the property through legitimate means. In this case, the State kept the cash; to her knowledge, no forfeiture hearing was ever held.

On cross-examination, Officer Davies testified that a $350 fee is required to file a petition to request a hearing. She acknowledged that the burden is on the individual to show a legitimate source for the cash or other property. She believed, based on the amount of drugs that was found in the vehicle, that the cash seized was money that had been obtained from the sale of drugs. She acknowledged that Defendant Byrd had an additional $400 in money orders on him that they did not seize. She further acknowledged that there were unopened Swisher cigars in the vehicle and that it is possible for crack cocaine and marijuana to be ingested by rolling it into a cigar to smoke.

Tennessee Bureau of Investigation ("TBI") Special Agent Forensic Scientist Jacob White, an expert in forensic chemistry, testified that he analyzed three of the eight substances submitted to the laboratory and determined them to consist of 1.17 grams of marijuana, 4.85 grams of cocaine base, and 1.21 grams of chloromethcathinone, an analogue of the controlled substance methcathinone. He explained that an analogue is a

substance that is chemically structurally similar to another substance, requiring only "minor small changes" to convert it into the other substance.

David Stuart Stills, a training sergeant with the Knoxville County School Division, testified that Belle Morris Elementary School was an elementary school that was in operation on March 28, 2016.

Donna Roach of the Knox County Geographic Information System identified a map of the 1000-foot zone around Belle Morris Elementary School, which showed that the location of the traffic stop was within 1000 feet of the school.

KPD Investigator Phillip Jinks, an expert in narcotics investigations, opined that the controlled substances in the case, with the exception of the marijuana, were possessed for resale. He explained in detail the basis for his opinion and the factors that indicated to him that the drugs were possessed for resale, which included: the amount of controlled substances; the large amount of cash, including the many $20 bills, which he said was the cost of the typical "rock" of crack cocaine; the loaded weapon; the nervous actions of the Defendants during the stop; and the lack of typical paraphernalia for ingesting the drugs. He said the amount of marijuana found in the vehicle, along with the fact that it was packaged in one single bag, indicated to him that it was for personal use.

Investigator Jinks estimated that the wholesale value of the crack cocaine was approximately $300 to $500 but that it would bring $1000 if broken into tenth of a gram rocks and sold individually on the street. He estimated the wholesale value of the powder cocaine was approximately $300, but it would be worth more if sold individually in smaller amounts. In his experience, there was a higher demand for crack cocaine, and he estimated that if the powder cocaine were converted into crack cocaine, it would be worth approximately $1,000 in a retail market. He said he was not familiar with the market value of the methcathinone analogue, which was similar to what is known as "bath salts" or "Molly," but knew that there was a resale market for it. He explained that drug manufacturers frequently changed the chemical structures of controlled substance analogues in order to "skirt the law" and that it was difficult for him to keep up with the current value.

Investigator Jinks also explained in some detail the forfeiture of drug-related cash and property and the process for contesting the forfeiture. He said the individual contesting the forfeiture has to pay a $350 cost bond to the Department of Safety when filing a petition contesting the forfeiture, unless incapable of making the payment. He stated that if incapable of paying, the individual can file an affidavit of indigency to have the cost bond waived. According to his testimony, information about the affidavit of indigency was in the notice from the Department of Safety that a forfeiture warrant has been issued.

On cross-examination, he acknowledged that the "green sheet" given to Defendant Byrd by the arresting officer was not the official start of the Department of Safety's forfeiture process, which begins when the Department of Safety sends its notice to the individual that forfeiture proceedings have been initiated. He conceded that the affidavit of indigency was not on the "green sheet" but said the green sheet contained information about the affidavit of indigency. To his knowledge, the officer did not explain to Defendant Byrd what an affidavit of indigency was or how to file one. He also did not know if Defendant Byrd ever received the Department of Safety's official notice of forfeiture.

On further cross-examination, he acknowledged that $20 bills are common and the denomination usually dispensed by bank ATMs. He also agreed that many Craigslist or Facebook marketplace sales are, presumably, cash transactions. He acknowledged that the narcotics found in the SUV were not broken down into the quantities that were typically used for resale.

As its final evidence, the State introduced a stipulation of facts that Defendant Brown, prior to March 28, 2016, had both a felony conviction for a drug offense and a felony conviction involving violence.

Defendant Byrd testified that on March 28, 2016, he sold a set of rims for $1,600 to a man who responded to his Facebook advertisement. He said he was at home counting the money and separating the amount he owed for child support to the three mothers of his children when his girlfriend got into an argument with him about his relationship with the mothers of those children. To escape the conflict, he called his long-time friend, Defendant Brown, to come pick him up from his home. He stated that he did not have any drugs or firearms on him and was unaware of the gun and the drugs in Defendant Brown's vehicle. He said he gave the officer his real name and became very uncomfortable when he heard Defendant Brown give a false name. He got out of the vehicle because Defendant Brown informed him that he was considering fleeing in the vehicle, and he wanted no part of that situation. He was agitated during the traffic stop and his subsequent arrest because he was not involved with the gun or the drugs and had no prior knowledge that they were in the vehicle.

On cross-examination, he acknowledged that he had been convicted of criminal impersonation in Knox County on May 10, 2007. He testified that he was unfamiliar with cocaine, but he acknowledged that he had previously been convicted of possession of cocaine. He said he never received any forfeiture notice from the Department of Safety.

Following deliberations, the jury convicted Defendant Brown of all the indicted offenses. The jury convicted Defendant Byrd of all the indicted drug offenses but acquitted

him of the gun offenses. After merging the various counts based on alternate theories of the same offense, the trial court sentenced Defendant Byrd to an effective fifteen-year sentence in the Department of Correction and sentenced Defendant Brown to an effective thirty-year sentence in the Department of Correction.

## I. Sufficiency of the Evidence

Both Defendants challenge the sufficiency of the evidence in support of their felony drug convictions. In addition, Defendant Brown, without any argument, asserts that the evidence was insufficient to sustain his convictions for employing a firearm during the commission of a dangerous felony.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewed in the light most favorable to the State, the evidence was sufficient to sustain the convictions. Neither Defendant challenges the location of the traffic stop in a drug free school zone or the amount of drugs found in the vehicle. In essence, each Defendant simply claims ignorance of the drugs and gun and argues that the proof shows that they belonged to the other man alone. In support, Defendant Byrd points to evidence that the vehicle belonged to Defendant Brown's girlfriend, that Defendant Brown gave a false name and indicated a desire to run, and that the gun was positioned with its handle toward the driver's seat. He also cites his explanation for how and why he had such a large sum of cash on his person. Defendant Brown, in turn, points to the large amount of cash found on Defendant Byrd and the fact that the drugs were found underneath the passenger seat of the vehicle to

argue that there was no proof that he possessed the drugs himself or acted with any intent to promote or assist Defendant Byrd in the sale of the drugs or to benefit from the proceeds of Defendant Byrd's drug sales. Defendant Brown argues that the proof, at most, supports a conviction for facilitation. The jury, however, heard all the proof and was instructed on the lesser offense of facilitation and yet convicted both Defendants of the indicted drug offenses. The jury acquitted Defendant Byrd of the gun offenses but convicted Defendant Brown of those offenses. By its verdicts, the jury obviously found that both men were in possession of the drugs together, that their possession of the drugs was with the intent to sell or deliver them, and that the gun found in the vehicle was Defendant Brown's alone and was not used by Defendant Byrd. There was sufficient proof from which the jury could make these determinations. Accordingly, we affirm the convictions.

## II. Denial of Motion to Suppress

Defendant Brown contends that the trial court erred in denying his motion to suppress the results of the traffic stop. He argues that the search was unconstitutional because his consent was obtained in response to questioning by the officer after he had been placed in custody but had not been advised of his Miranda rights against self-incrimination. The State argues that the officer's request for consent to search the vehicle was not an interrogation, that Defendant Browns's consent to the search was not an incriminating admission under Miranda, and that the officer was not required to issue Miranda warnings before asking basic investigatory questions of the Defendants.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. The application of the law to the facts found by the trial court is a question of law and is reviewed de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the United States and Tennessee constitutions prohibit unreasonable searches and seizures. U.S. Const. amend IV; Tenn. Const. art. I, §7. Generally, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 630

(Tenn. 1997). The State has the burden to demonstrate, by a preponderance of the evidence, that a warrantless search falls under one of the exceptions to the warrant requirement. State v. Harris, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

Exceptions to the warrant requirement include consent to search, search incident to a lawful arrest, evidence in plain view, hot pursuit, exigent circumstances, and consent to search. State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007).

The consent exception applies when an individual voluntarily consents to a search. State v. Reynolds, 504 S.W.3d 283, 306-07 (Tenn. 2016) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Berrios, 235 S.W.3d at 109. The State has the burden to prove that consent was freely and voluntarily given. Schneckloth, 412 U.S. at 222. "The pertinent question is . . . whether the [individual's] act of consenting is the product of an essentially free and unconstrained choice. If the [individual's] will was overborne and his or her capacity for self-determination critically impaired, due process is offended." State v. Cox, 171 S.W.3d 174, 185 (Tenn. 2005) (citing Schneckloth, 412 U.S. at 225-26). Among the factors to be considered are the time and place of the encounter, level of hostility between the police and the individual, number of officers involved, and the individual's "age, education, intelligence, knowledge, maturity, sophistication, experience, prior contact with law enforcement personnel, and prior cooperation or refusal to cooperate with law enforcement personnel." Cox, 171 S.W.3d at 185 (internal quotations omitted).

There are three levels of police-citizen interactions: (1) a full-scale arrest, which must be supported by probable cause; (2) a brief investigatory detention, which must be supported by a reasonable suspicion, based upon specific and articulable facts, of criminal wrong-doing; and (3) a brief "encounter" which requires no objective justification. State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008).

On appeal, Defendant Brown does not challenge the officer's basis for the stop or the duration of the stop, nor that he gave the officer consent to search the vehicle. Instead, he argues only that he was under custodial arrest when handcuffed and placed in the back of the patrol vehicle and should have been issued Miranda warnings before the officer asked for his consent for the search.

Both the United States and Tennessee Constitutions protect against compelled self-incrimination. See U.S. Const. amend. V; Tenn. Const. art. I, § 9. The State is, therefore, prohibited from using statements made by an accused during custodial interrogation unless the accused has previously advised of his or her constitutional rights to remain silent and to an attorney, and has knowingly, voluntarily, and intelligently waived those rights. See Miranda v. Arizona, 384 U.S.436,444 (1966).

We agree with the State that the officer's asking for consent to search the vehicle was not a "custodial interrogation," and Defendant Brown's response giving him permission was not an "incriminating statement." The trial court found that Defendant Brown gave the officer consent to search the vehicle. Implicit in the trial court's ruling is a finding that the consent was voluntary. The evidence does not preponderate against these findings. We conclude, therefore, that the trial court properly denied the motion to suppress.

### III. Jury Instructions

Defendant Brown also contends that the trial court erred by giving the jury "inconsistent oral and written instructions that prevented jury unanimity on several counts." [Brief, 16 (header)]. The State responds that the Defendant is not entitled to any relief on the basis of this issue, noting that although the trial court initially gave the jury an incorrect oral instruction in counts 3 and 4, it immediately corrected its mistake after reading the written instructions, so that both the oral and written instructions were consistent.

It is well settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011); see also State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001) (citing State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). "Whether jury instructions are sufficient is a question of law appellate courts review de novo with no presumption of correctness." State v. Clark, 425 S.W.3d 268, 295 (Tenn. 2014).

The record reflects that the trial court initially erroneously instructed the jury with respect to counts three and four that the Defendants were charged with knowingly selling and delivering a controlled substance analogue, rather than with possession with the intent to sell or deliver. After that mistake, the trial court issued corrected instructions, informing the jurors it had made a change to the instructions in counts three and four and that the correct instructions were marked on the written set of instructions that the court was sending with them as they retired to deliberate.

We agree with the State that the trial court's correction of its initial mistake was sufficient to ensure that the jury was properly instructed on the law. We conclude, therefore, that Defendant Brown is not entitled to relief on the basis of this issue.

- 11 -

## IV. Defendant Byrd's Failure to Contest Forfeiture Proceedings

Defendant Byrd contends that the trial court erred in allowing the State to question witnesses about the forfeiture proceedings and whether Defendant Byrd contested the forfeiture of his cash to the State. He argues that evidence related to a separate civil forfeiture proceeding was not relevant to the issues in his criminal trial and that, even if marginally relevant, its probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury.

In considering this issue, we apply the general rule that "admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." State v. Robinson, 146 S.W.3d 469, 490 (Tenn. 2004). A trial court's exercise of discretion will only be reversed on appeal if the court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)). When determining admissibility, a trial court must first determine if the evidence is relevant. Id.; Tenn. R. Evid. 402. If the court determines that the evidence is relevant, it must then determine whether its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403; Robinson, 146 S.W.3d at 490.

The record reflects that Defendant Byrd raised an objection when the prosecutor began questioning Officer Davies about the forfeiture process. The trial court overruled the objection, noting that the rules of evidence are broad and that it would be for the jury to determine what inferences to draw from the evidence.

We find no abuse of discretion in the trial court's ruling. The evidence was relevant to the issue of whether the drugs found in the vehicle were possessed with the intent to sell and deliver them, and its probative value was not "substantially outweighed" by the danger of unfair prejudice or misleading of the jury. With respect to this latter point, we note that counsel for Defendant Byrd was successful in eliciting admissions from the State's witnesses about the cost involved in filing a petition to contest the forfeiture and the fact that the sheet provided by the officer did not include an affidavit of indigency. Investigator Jinks also acknowledged that he had no idea if Defendant Byrd received notice from the Department of Safety of the forfeiture proceedings, and Defendant Byrd testified that he did not. Defendant Byrd is not entitled to relief on the basis of this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE